Plaintiff was employed by the Star Bottling Works, Inc., as a helper to a truck engaged in delivering Coca Cola and other soft drinks and in taking up cases of empty bottles. While loading some empty cases one or more bottles fell therefrom to the concrete pavement and broke. A tiny particle of glass therefrom flew into plaintiff's right eye and lodged between the lid and the eyeball. He was quickly taken to the office of Doctors Woolworth and Gray, reputable optometrists in the City of Shreveport, and the particle was removed by Dr. Woolworth. A medical patch was placed over the eye "to help nature heal over whatever little scratches" there were. It was worn less than a day. Plaintiff was told that the effects of the accident would entirely pass away in a day or two and was further advised to return for additional treatment if the eye bothered him. He knew the expense of any treatment given him by these doctors would be paid by his employer.
Plaintiff resumed work the day following the accident and continued to perform his duties as helper until discharged for cause some three weeks thereafter. He did not return to these doctors for examination or treatment until July 16, 1940, about eleven months subsequent to the accident and five days after he had engaged counsel to press demand for payment of the amounts herein sued for.
Plaintiff sues to recover workmen's compensation on the theory that his eye's vision has been permanently impaired from the effect of the particle of glass entering it. His demand is for sixty-five (65%) per cent of his weekly wages for a period of one hundred (100) weeks and for medical, physicians' and hospital bills. He impleads his employer and the Fidelity Casualty Company of New York, the carrier of the employer's compensation insurance.
Defendant's answer confines the issues to one, to-wit:
That if the vision of plaintiff's eye is impaired to any extent, it is not due to nor has it any causal connection with the accident. Plaintiff was awarded judgment for the amounts sued for and defendants appealed.
Plaintiff testified that his right eye feels as though something is under the lid; that the uncomfortable sensation worries him all the time; "looks like something is still in my eye"; that he could not see as well out of the right eye as he could before the accident; that neither eye had given him any trouble prior to that time. He admits that he has continuously performed, since the accident, the same sort of work he performed prior thereto and that weekly wages earned after his discharge by defendant were nearly twice as much as those previously earned by him.
Dr. Woolworth found that the piece of glass was stuck in the conjunctiva between the lid and eyeball. The conjunctiva, it is explained, is the mucous membrane lining the interior of the lids which continues forward over the eyeball. It is of very delicate structure. The particle of glass *Page 565 
was so infinitesimal that Dr. Woolworth made no record of its size. It did not penetrate the coverings of the eyeball and whatever injury it did inflict to the membrane was considered nonpotential. Dr. Woolworth is positive that the fact that the glass lodged as it did, did not to any extent unfavorably affect the eye's vision and that if there is now any impairment of the vision, it is not traceable to the accident. He testified as follows:
"Well, the condition of his eye was such he could have gone back to work the next day; we usually tell them to keep the patch on one day and go on back to work; they can go to work the same day, but we usually have a routine of three to five days * * *."
After being discharged by defendant in July, plaintiff immediately procured employment with another firm in the City of Shreveport and satisfactorily discharged his duties until the trial of this case in October, 1940, two months subsequent to the filing of this suit. It does not appear that the eye's condition in any manner militated against efficient performance by plaintiff of his duties over this period.
Dr. Gray examined plaintiff's eye when he returned in July. He then complained that the eye felt as though something was in it, and that "it goes red at times"; that these sensations and symptoms have been present continuously since the accident occurred. After a very thorough examination of the eye, Dr. Gray was able to and did give the opinion that any impairment of its vision was not ascribable to the glass flying into it. He did find a small area of choroiditis about four millimeters (practically .16 inch) in diameter in the back portion of the eyeball wholly disconnected from the locus of the glass' entry. Dr. Gray explained that choroiditis is usually caused from infection, kidney and blood diseases, and rarely ever by trauma. He found a difference, possibly congenital, in the strength of vision of the two eyes and prescribed glasses therefor. Such a condition is not uncommon in the eyes of adult as well as younger persons. Many so affected go through life without knowing it.
Dr. L.W. Gorton, also an eminent optometrist in Shreveport, examined plaintiff's eye on July 18, 1940. His findings and conclusions differ in no material respect from those of Dr. Gray made two days prior. He testified on the subject as follows:
"Q. In your opinion, Doctor, was the physical function of his eye affected by this accident which he related to you — that is as of the date of your examination? A. No, I don't think it was."
Neither Dr. Gray nor Dr. Gorton detected any evidence of the original injury to the eye. Neither discovered any pathology to support the complaints of discomfort, etc. asserted by plaintiff. The presence of the choroiditis in a limited way affects lateral vision, but it is certain it was not superinduced by the trauma. Being on the opposite side of the eyeball, to conclude that it was caused by the original injury, we would have to assume that such injury extended through the ball. We know this did not happen.
We are convinced that the defense is abundantly sustained by the testimony adduced to support it. Plaintiff's own course of conduct in no small degree affects unfavorably his present profession.
There is no testimony whatever to support the award of $250 for medical, hospital and physicians' bills.
For the reasons assigned, the judgment appealed from is reversed and set aside; plaintiff's demands are rejected and his suit dismissed at his cost.